UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/27/2018

JANET WHITE,

                Plaintiff,

    -against-

BEST CHEESE CORPORATION, COACH
FARM ENTERPRISES, INC., BEST CHEESE
TRADING CORP., UNIEKAAS U.S.A., INC.,
UNIEKAAS INTERNATIONAL BV,
WILLEM JAN ROTE, individually and
STEVEN MILLARD, individually,

                Defendants.

Case No. 17 CV 4487 (NSR)
OPINION AND ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff Janet White ("Plaintiff") filed this action against Defendants Uniekaas International BV ("Uniekaas International") and Uniekaas U.S.A., Inc. ("Uniekaas USA") (collectively, the "Uniekaas Defendants")[1] alleging: (1) sex discrimination in violation of 42 U.S.C. § 2000e *et seq.* ("Title VII"); (2) sex discrimination in violation of New York State Human Rights Law, NY CLS Exec § 290 (NY § 290) ("NYHRL"); (3) age discrimination in violation of 29 U.S.C. § 621 *et seq.* ("ADEA"); (4) age discrimination in violation of N.Y. Exec. Law § 290 (McKinney 2018) ("NYHRL"); (5) aiding and abetting aforementioned discriminatory conduct under N.Y. Exec. Law § 296(6) (McKinney 2018); and (6) retaliation in violation of Title VII, the ADEA, and NYHRL. (*See* Amended Complaint ("Am. Compl.") (ECF No. 39).)[2] Plaintiff claims that the Uniekaas Defendants constitute her "employers" for purposes of her claim. The Uniekaas

---

[1] Plaintiff also asserts this action against Best Cheese Corporation, Coach Farm Enterprises, Inc., Best Cheese Trading Corp., Willem Jan Rote, and Steven Millard, but claims against such defendants are not the object of this motion.
[2] Plaintiff's initial complaint was filed on June 15, 2017 and included three claims which are no longer before the Court.

Defendants now move to dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted (the "Uniekaas Defendants' Motion"). For the reasons stated below, the Uniekaas Defendants' Motion is GRANTED in part and DENIED in part.

## FACTS ALLEGED

The following facts – which are taken from the Amended Complaint, materials it incorporates and matters of which the Court may take judicial notice – are construed in the light most favorable to Plaintiff, as she is the non-moving party. *See, e.g. Kleinman v. Elan Corp.*, 706 F.3d 145, 153 (2d Cir. 2013); *Gonzalez v. Hasty*, 651 F.3d 318, 321 (2d Cir. 2011).

Defendant Best Cheese Corporation ("Best Cheese") is a New York State Corporation and has its principle place of business in Purchase, New York. (*See* Am. Compl. ¶ 3.) Best Cheese is a wholly-owned subsidiary of Uniekaas International, which is a company organized under the laws of the Netherlands with its principal place of business in Kaatsheuvel, Netherlands. (*Id.* ¶¶6, 7.) Defendant Uniekaas U.S.A. is a Delaware corporation with its principle place of business in Purchase, New York. (*Id.* ¶6.) Uniekaas U.S.A. is owned 51% by Uniekaas International and 49% by Best Cheese. (*Id.*)

Plaintiff is a 67 year-old female. (*Id*. ¶2.) In 2001, Plaintiff began working at Best Cheese and became the company's Chief Financial Officer ("CFO") in 2008. (*Id*. ¶14.) Plaintiff also prepared annual financial statements for Uniekaas U.S.A. (*Id.* ¶15).

In 2012, Defendants Paul Wilde ("Wilde") and Willem Jan Rote ("Rote") jointly acquired a majority interest in Uniekaas International, obtaining control of Best Cheese. (*Id*. ¶23.) Rote then began telling Steve Margarites ("Margarites") President of Best Cheese at the time, that he and other owners of Uniekaas International wanted Plaintiff fired and

replaced with a younger man.  (*Id*. ¶24.)  Margarites refused and Plaintiff continued to work at Best Cheese, receiving annual raises and bonuses.  (*Id*. ¶¶25, 30-32.)  Rote repeatedly urged Margarites to fire Plaintiff or "break her" into quitting because he and others at Uniekaas International regarded her as unattractive and heavyset.  (*Id*. ¶78.)

In July 2015, Plaintiff discussed with Wilde that she planned to work through the end of 2020 and Wilde assured her that her future employment was secure.  (*Id*. ¶32.)  Around June 2015, Margarites left Best Cheese and, at the arrangement of Rote, Steven Millard ("Millard") succeeded him as President in August 2015.  (*Id*. ¶33.)

Thereafter, Millard, at the direction and approval of Rote and Uniekaas International, began a course of discrimination against Plaintiff.  (*Id*.)  Shortly after Millard arrived, he informed Plaintiff that her salary would increase, but she would also be given additional responsibilities, effective October 1, 2015.  (*Id*. ¶34.)  Plaintiff insisted, however, that she did not have time to take on more work, as she was already working seven days a week; she therefore attempted to hire help, but her attempts were rejected by Millard.  (*Id*. ¶¶36-37.)  Starting in March 2016, Millard began to complain that Plaintiff was not adequately performing her job duties.  (*Id*. ¶41.)  Plaintiff contends that the changes to her job responsibilities and denials of her attempts to hire help were tactics Defendants used to "break her", as Rote had been trying to do for years.  (*Id*. ¶ 42.)

Additionally, at a golf outing at Doral Arrowwood in Rye Brook, New York. (*id.* ¶44), Plaintiff was "badgered into" participating, though Millard knew Plaintiff did not play golf and was "not physically up to it," (*id*.)  At one point on the golf course, a considerable distance from the clubhouse, Plaintiff needed to use the ladies' restroom.  (*Id*.)  Millard and a group of other male employees told Plaintiff and another female employee to relieve themselves in

the woods as the men in the group had been doing.  (*Id*.)  Plaintiff begrudgingly did so and fell while attempting to find her way back to the golf course from the woods.  (*Id*.)

On August 15, 2016, Millard presented Plaintiff with a letter announcing that Best Cheese intended to demote her from CFO to Controller and cut her salary.  (*Id*. ¶45.)   On August 17, 2016, Plaintiff met her replacement as CFO, Jan Poulson, a male who appeared to be in his early thirties.  (*Id*. ¶48.)

Plaintiff then retained counsel.  (*Id*. ¶ 50.)  On August 30, 2016, Plaintiff's counsel wrote to Millard and Rote complaining of discriminatory conduct and warned that Plaintiff was prepared to commence litigation if a more satisfactory resolution was not reached promptly.  (*Id*.)  After receiving the letter, Millard scolded Plaintiff for "getting a lawyer involved."  (*Id*. ¶51.)

On August 31, 2016, Millard informed Plaintiff she was being placed on "Paid Administrative Leave" and was told that even though she would be on the payroll and actively employed, she was not to report for work or perform her duties until Best Cheese notified her to do so.  (*Id*. ¶52.)

 Plaintiff remained on paid administrative leave from September 1, 2016 through December 9, 2016.  (*Id*. ¶56.)  On December 6, 2016, Plaintiff received a letter bearing the letterhead of Uniekaas International and Best Cheese which informed her she was terminated effective December 9, 2016, "[d]ue to significant misfeasance . . . ."  (*Id*. ¶58.)  The letter was not signed nor did it name its author, but closed with "Regards, the Best Cheese Company and Uniekaas Nederland B.V." (*Id*.)

On or about December 12, 2016, Plaintiff applied for unemployment benefits with the New York State Department of Labor (the "DOL").  (*Id*. ¶60.)  On or about December 21,

2016, Millard fled a criminal complaint against Plaintiff with the Harrison Police Department claiming that Plaintiff "embezzled funds" from Best Cheese and had been terminated for doing so. (*Id*. ¶62.) Plaintiff was investigated as a result. (*Id*.) Best Cheese also made similar claims to representatives of Paychex, Best Cheese's payroll service, to undermine Plaintiff's application for unemployment benefits.[3] (*Id*. ¶63.) On or about January 10, 2017, the DOL notified Plaintiff that she would not be able to use her wages from Best Cheese before December 10, 2016 to collect unemployment insurance benefits because she was "discharged for misconduct in connection with [her] employment with [Best Cheese Corp.]" (*Id*. ¶64.)

On or about January 18, 2017, Plaintiff wrote to the DOL denying Best Cheese's allegations of misconduct and stating that such accusations were an "effort to concoct some defense to the EEOC charges they knew [Plaintiff] was preparing to file and to the employment discrimination [Best Cheese] correctly fear is coming." (*Id*. ¶66.) On or about February 7, 2017, DOL notified Best Cheese that it was approving Plaintiff's claims for unemployment benefits and Plaintiff received her first unemployment check on February 10, 2017. (*Id*. ¶67.) Best Cheese objected to the DOL's determination. (*Id*. ¶68.) On March 20, 2017, Plaintiff received notice that the DOL's Unemployment Issuance Board scheduled a hearing scheduled for March 28, 2017 before an Administrative Law Judge (the "ALJ"). (*Id*.)

On March 21, 2017, Plaintiff's counsel wrote to the ALJ asking to reschedule the hearing so Plaintiff would have time to call Margarites as a witness to testify on her behalf.

---

[3] The substance of the claims were that Plaintiff: "(a) 'was misappropriating funds and that the employer believes it has been going on for years'; (b) 'was overstating money to be reimbursed for her expenses'; (c) 'was discharged for misfeasance, misappropriating funds and the employer believes it had been going on for years'; (d) 'affected the business by creating a financial loss'; (e) "violated numerous financial policies'; (f) disregarded an expectation 'not to misappropriate funds'; (g) would have known that Plaintiff's 'misappropriation [of] funds was both illegal and unethical and [] against the Companies' code of conduct'; [and] (h) Plaintiff's discharge was a 'Misconduct Discharge.'" (Am. Compl. ¶ 63).

(*Id*. ¶69.)  Best Cheese withdrew its appeal the following day and the March 28, 2017 hearing was cancelled.  (*Id*. ¶70.)

## LEGAL STANDARD

### I.    Rule 12(b)(6)

On a Rule 12(b)(6) motion to dismiss, a court must assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.* at 679.  The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements", or "[t]hreadbare recitals of the elements of a cause of action."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense."  *Id.* at 679.  A claim is facially plausible when the factual content pled allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.

The Court is "limited to the facts as presented within the four corners of the complaint, [the] documents attached to the complaint, or [] documents incorporated within the complaint by reference."  *Taylor v. Vermont Dept. of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002) (citing *Hayden v. Cty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)).

Plaintiff asks the Court to take judicial notice of Best Cheese's website, http://bestcheeseusa.com/ and Uniekaas's, http://uniekaasusa.com.  When deciding a motion to

dismiss, the Court may consider "any matters of which judicial notice may be taken," *Hirsch v. Arthur Anderson & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995), including these websites, *see Wexelberg v. Project Brokers*, No. 12-CV-7904 (LAK) (MHD), 2014 WL 2624761, at *7 (S.D.N.Y. Apr. 28, 2014) (holding defendant-employers' websites "amount to admissions by defendants" in an ADA claim); *see e.g.*, *23–34 94th St. Grocery Corp. v. N.Y.C. Bd. of Health*, 685 F.3d 174, 183 & n. 7 (2d Cir. 2012) (citing *United States v. Akinrosotu*, 637 F.3d 165, 168 (2d Cir. 2011)).

## DISCUSSION

Defendants Uniekaas International and Uniekaas USA move to dismiss each of the claims alleged in Plaintiff's Amended Complaint. (*See* the Uniekaas Defendants' Brief in Support of their Motion ("Defs. Br.") (ECF. No. 66) at 1-3.) Specifically, the Uniekaas Defendants contend that they are not "employers" for purposes of Title VII, the ADEA, or the NYHRL. (*See id*. at 9.)

## I.   <u>Single and Joint Employer Doctrines</u>

"To prevail in an employment action against a defendant who is not the plaintiff's direct employer, the plaintiff must establish that the defendant is part of an 'integrated enterprise' with the employer, thus making one liable for the other." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 341 (2d Cir. 2000); *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d. Cir. 2014). "In making this determination, a court must evaluate whether the circumstances surrounding the Plaintiff's employment require a conclusion that the employee was 'constructively' working for an entity other than his direct employer." *Ramirez v. CHS Services, Inc.* 15-CV- 3416, (JFB) (AYS), 2016 WL 11264724, at *6 (E.D.N.Y. Aug. 2, 2016) (citing *Brown* 756 F.3d at 226)).

Under the single employer doctrine, Plaintiff must assert factual allegations supporting four factors to hold multiple entities jointly liable for unlawful employment-related conduct: "(1)

interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Murray v. Miner,* 74 F.3d 402, 404 (2d Cir. 1996). Though no factor is determinative, the second, "centralized control of labor relations", is the most significant. *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 156 (2d. Cir. 2014) (citing *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240-41 (2d. Cir. 1995)).

The critical question is "what entity made the final decisions regarding employment matters related to the plaintiff?" *Cook*, 69 F.3d at 1240. "In addition, 'the Court must focus its inquiry on the parent's actual involvement in the particular circumstances giving rise to the litigation . . . .'" *St. Jean v. Orient-Express Hotels Inc.*, 963 F. Supp. 2d 301, 309 (S.D.N.Y. 2013) (quoting *Herman v. Blockbuster Entm't Grp.*, 18 F. Supp. 2d 304, 311 (S.D.N.Y. 1998)). The Second Circuit has stated that ordinarily, "[w]hether two related entities are sufficiently integrated to be treated as a single employer is generally a question of fact not suitable to resolution on a motion to dismiss." *Brown*, 756 F.3d at 226.

Under the joint employer doctrine, liability may be imposed on the theory that two entities are legally separate "but they . . . handle certain aspects of their employer-employee relationship jointly." *Clinton's Ditch Cooperative Co. v. NLRB*, 778 F.2d 132, 137 (2d Cir. 1985); *see Arculeo v. On-Site*, 425 F.3d 193, 198 (2d Cir. 2005). Factors used to determine if two entities are joint employers are "commonality of hiring, firing, discipline, pay, insurance, records, and supervision." *NLRB v. Solid Waste Servs., Inc.*, 38 F.3d 93, 93 (2d. Cir. 1994) (citing *Clinton's Ditch*, 778 F.3d at 138-139).

A.      **Uniekaas International**

The Uniekaas Defendants argue the alleged facts fail to show that Uniekaas International and Best Cheese constitute a single or joint employer. (*See* Defs. Br. at 2, 16.) Specifically, they

argue that the Amended Complaint fails to demonstrate that Uniekaas International controlled the terms of Plaintiff's employment, or had an interrelation of operations or common management with Best Cheese. (*See id.* at 12-13, 15.) They contend that Plaintiff can likewise not avail herself of the joint employer doctrine because the Amended Complaint lacks facts to illustrate that the essential factors of the doctrine are met. (*Id.* at 16.) This Court disagrees.

Despite the Uniekaas Defendants' arguments to the contrary, Plaintiff sufficiently alleges that Uniekaas International and Best Cheese's relationship meets the single employer doctrine. Plaintiff "need only allege facts 'sufficient to put [the defendant] on notice of the theory of employer liability upon which her claims are based.'" *Downey v. Adloox Inc.*, 238 F. Supp. 3d 514, 523 (S.D.N.Y. 2017) (quoting *Fowler v. Scores Holding Co.*, Inc., 677 F. Supp. 2d 673, 681 (S.D.N.Y. 2009)). Plaintiff has done so.

Here, as to centralized control of labor relations, the most important factor, Plaintiff alleges that Margarites left Best Cheese in June 2015, and in August, Uniekaas International and Rote arranged for Millard to succeed him. (*See* Am. Compl. ¶33.) Millard, acting at the discretion and with the approval of Rote and Uniekaas International, promptly began a persistent course of discriminatory and unlawful conduct against Plaintiff. (*Id.*). *See also Brown*, 756 F.3d at 228 (holding the alleged control the parent exercised over the subsidiary's employment actions, which laid at the core of the discrimination claims, was enough to survive a motion to dismiss). Moreover, Plaintiff alleges that the conduct Millard engaged in toward her was precisely the conduct advocated by Rote during Margarites' tenure as President. (*Id.* ¶42.) Making reasonable inferences in Plaintiff's favor, as this Court must do, Plaintiff has plausibly claimed that Rote was, at the very least, was influential in Millard's conduct, in light of the fact that Rote "arranged" for Millard to be appointed President, and shortly after that happened, Millard began engaging in the

precise conduct Rote repeatedly requested of Margarites. Such inferences give rise to the application of the single employer doctrine.

Furthermore, Plaintiff alleges that she discussed her plans to work through the end of 2020 with Uniekaas's General Manager, Wilde and he made certain assurances to her about her future. *See Wexelberg*, 2014 WL 2624761, at *7 (allegations that plaintiff negotiated his employment with the CEO of the parent corporation "plausibly suggest[] that the parent maintained control of employment decisions").

As to common ownership, Plaintiff has alleged that Best Cheese is a wholly-owned subsidiary of Uniekaas International. (*See* Am. Compl. ¶3.) As to common management, Plaintiff alleges Margarites and Rote traveled between the Netherlands and New York from time to time for various meetings. (*Id*. ¶24.) *See Harris v. N.Y. Times*, No. 90-CV-5234 (CSH), 1993 WL 42773, at *12 (S.D.N.Y. Feb. 11, 1993) (finding parent and subsidiary met the single employer standard where, *inter alia*, the subsidiary's president "shuttled back and forth between [parent] and its subsidiaries upon a number of occasions").

With respect to interrelation of operations, the Uniekaas and Best Cheese websites link to one another, and both websites demonstrate that Best Cheese is the exclusive importer of Uniekaas cheeses. *See Wexelberg*, 2014 WL 2624761, at *6-7 (finding interrelation of operations where U.K. parent and American subsidiary's websites mentioned and linked to one another and the U.K. parent's "Contact Us" page listed the American subsidiary). Similar to *Wexelberg*, Uniekaas's website lists Best Cheese representatives and Best Cheese's address under the "Contact Us" page. (*See* Plaintiff's Brief in Opposition ("Plf. Br.") (ECF No. 71) at Appx. 1.) Facts giving rise to the application of the federal single employment doctrine have thus been pled.

This Second Circuit instructs courts "to apply the same four-factor [single employer] inquiry to determine whether two or more entities constitute a 'single employer' under New York Human Rights Law." *Turley*, 774 F.3d at 156 ("Applying the test under both federal and state statutes serves the stated goal of the New York Court of Appeals 'to resolve federal and state employment discrimination claims consistently.'"); *see A*urecchione v. N.Y. State Div. of Human *Rights*, 771 N.E.2d 231, 233 (N.Y. 2002); *see also Hicks v. Baines*, 593 F.3d 159 (2d. Cir. 2010) (explaining that New York courts rely on federal case law in this area). As with the federal standard, the most important factor under this test is "[w]hether the alleged employer exercised control over the employee's conduct and the incidents of his employment." *Allie v. Nynex Corp.*, 158 F.R.D. 239, 246 (E.D.N.Y 1994). Therefore, the analysis is the same. As explained in detail above, Plaintiff has alleged sufficient facts to survive the Uniekaas Defendants' Motion.

Accordingly, Plaintiff's allegations sufficiently allege the existence of a single employer relationship between Best Cheese and Uniekaas International such that her claims are nudged over the line from possible to plausible. Consequently, that portion of the Uniekaas Defendant's Motion is denied.

### B. Uniekaas U.S.A.

Plaintiff does not fare so well as to the claims against Uniekaas U.S.A., a subsidiary of Best Cheese. The lack of allegations as to Uniekaas U.S.A. is telling.

Plaintiff's Amended complaint alleges a total of three allegations pertaining to Uniekaas U.S.A.: (1) that Uniekaas U.S.A. is a Delaware Corporation with its principle place of business in Purchase, New York; (2) it is owned 51% by Uniekaas International and 49% by Best Cheese; and (3) Plaintiff prepared annual financial statements for the company. (*See* Am. Compl. ¶¶6, 15.)

These allegations are inadequate to raise a claim that that Uniekaas U.S.A., a subsidiary of Best Cheese, had control of Best Cheese's labor relations, interrelation of operations, common management, or common ownership or financial control. Nor is there any assertion that Uniekaas U.S.A. and Best Cheese share a "commonality of hiring, firing, discipline, pay, insurance, records, and supervision" required for the application of the joint employer doctrine.

As detailed, *supra* I.A., the primary concern of the single employer doctrine is control that one company has over another's labor relations. *See, e.g. Cook*, 69 F.3d at 1240; *Turley* 774 F.3d at 156; *Murray*, 74 F.3d at 404. The joint employer doctrine is similarly concerned with whether two entities "handle certain aspects of their employer-employee relationship jointly." *Clinton's Ditch*, 778 F.2d at 137 (2d Cir. 1985); *see Arculeo*, 425 F.3d at 198. Plaintiff has not alleged any facts that Uniekaas U.S.A., Best Cheese's subsidiary, had any control over Best Cheese's labor relations or other fact that illuminate the existence of the remaining factors relevant to either the single or joint employer doctrines. It is telling that Plaintiff's Amended Complaint merely contains a word for word restatement of the factual allegations contained in her original Complaint with respect to Uniekaas U.S.A. (*Compare* Complaint, (ECF. No. 2) ¶¶6, 15 *with* Am. Comp. ¶¶6, 15.) Moreover, in opposition to the motion, Plaintiff reiterates her allegations and fails to explain how they plausibly allege that this subsidiary should be considered her employer. (*See* Plf. Br. at 12-13.) Nevertheless, as Plaintiff's claims fail for insufficiency of her pleadings, and not as a matter of law, she will be afforded an opportunity to re-plead.

## II.   <u>Aiding and Abetting under the NYHRL</u>

Plaintiff also argues that the Uniekaas Defendants aided and abetted a violation of the NYHRL. (*See* Am. Comp ¶¶ 83, 92.) NYHRL provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of the acts

forbidden under this article, or to attempt to do so." N.Y. Exec. Law § 296(6). Liability exists under the NYHRL where a defendant "actually participates in the conduct giving rise to the claim of discrimination" and shares "the intent or purpose of the principle actor." *Fried v. LVI Serv. Inc.*, No. 10-CV-9308 (JSR), 2011 WL 2119748, at *7 (S.D.N.Y. May 23, 2011). A finding "that a defendant actually participated in the discriminatory conduct requires a showing of direct, purposeful participation." *Id.* (quoting *Brice. v. Sec. Ops. Sys., Inc.*, No. 00-CV-2438 (GEL), 2001 WL 185136, at *4 (S.D.N.Y. Feb. 26, 2001)).

### A.   Uniekaas U.S.A.

As to Uniekaas U.S.A., Plaintiff fails to state a claim of aiding and abetting under the NYHRL. Plaintiff's scant allegations against Uniekaas U.S.A., regarding its incorporation, ownership allocation, and the fact that Plaintiff prepared financial statements for them, in no way speaks to the elements of aiding and abetting. Indeed, Plaintiff does not allege that any of the actors who purportedly discriminated against her are affiliated with Uniekaas U.S.A. at all. Even if she had, there is no indication, from the allegations, that the corporate directors of Uniekaas U.S.A. shared the "intent or purpose of the principle actor." Plaintiff's claim must fail. The claim is therefore dismissed.

### B.   Uniekaas International

As to Uniekaas International, Plaintiff alleges that "Margarites left Best Cheese around June 2015, and in August 2015, Uniekaas [International] and Rote arranged for Millard to succeed him." (*See* Am. Compl. ¶33.) Millard promptly began discriminating against Plaintiff at the direction and with approval of Rote and Uniekaas International. (*Id.*) Plaintiff also alleged that the increase in job responsibilities and denials of her attempts to hire help were tactics used to "break her", as Rote had been trying to do for years. (*Id.* ¶ 42.) Consequently, Plaintiff has nudged her claim across the line from conceivable to plausible that Rote and Uniekaas International

directly participated in the conduct giving rise to Plaintiff's discrimination claim. Accordingly, Uniekaas Defendants' Motion to dismiss Plaintiff's NYHRL aiding and abetting claims against Uniekaas International is denied.

## CONCLUSION

For the foregoing reasons, the Uniekaas Defendants' Motion is DENIED in part and GRANTED in part. It is granted insofar as it seeks dismissal of all claims against Uniekaas U.S.A., federal and state. It is denied in all other regards. Plaintiff is permitted to amend her complaint to the extent she can allege facts sufficient to demonstrate control for purposes of the single employer or joint employer doctrines as to Uniekaas U.S.A. She is also permitted to amend her complaint to adequately allege a claim for aiding and abetting in violation of the NYHRL against Uniekaas U.S.A. If she chooses to do so, she must on or before October 18, 2018. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 63.

Dated: September 27, 2018                          SO ORDERED:
      White Plains, New York

NELSON S. ROMÁN
United States District Judge